HoweiiIi, J.
This is an action for the settlement of a partnership formed for the purpose of buying and selling cotton on speculation, and the only matters of dispute are the purchase and sale of two lots of cotton — one of thirty-four and the other olfifty-two bales.
Both parties admit that they were equal partners; that on 31st January, 1865, they made a mutual settlement, which showed that the defendant owed plaintiff $590, on their joint transactions, $500, cash advanced that day and a bill of merchandise amounting to $1,145 16, making an aggregate of $2,435 16, irrespective of the said two lots of cotton; and after trial, a jury gave plaintiff a verdict for $2,642 32, from a judgment on which the defendant has appealed.
The net proceeds of the two lots of cotton in question, according to the accounts of sale rendered by the factors, and to the correctness of which we see no well founded objection, amount to $10,846 58; from one half of which, ($5,423 29) if we deduct the above sum of $2,435 16, due by defendant, we have $2,988 13 in the hands of plaintiff as due to the defendant. But it is contended that the defendant did not pay his proportion of the purchase price of said cotton, or the half of $908 68, expenses paid by plaintiff in securing the cotton sold; while, on the other hand, the defendant contends that he advanced more than his share, and that the charges in the accounts of sales and the sum paid for securing the cotton are exorbitant, and some of them unauthorized.
For one lot, sold by E. A. York, we find that plaintiff paid $2,264 29 more than the defendant paid. For the other lot, bought of A. H. Gardner and sold by J. F. Caruthers, according to plaintiff’s recept marked “B,” each party paid his proportion.
*352 Hence we must deduct from defendant’s share in the hands of plaintiff, to-wit: $2,988 13, as above stated, the sum of $2,718 63, consisting of $2,264 29, overpaid by plaintiff, and $454 34, one-half of the amount paid for securing and hauling the cotton, which willleave $269 50 due the defendant on the' two lots of cotton.
The error of plaintiff’s calculation consists in making defendant account to him for one-half of the loss on the adventures, out of the proceeds before the division, while the true rule is to ascertain what each has contributed, make them equal in this respect, and divide the balance of the proceeds. Under this rule we have obtained the above result, using plaintiff’s figures.
It is therefore ordered that the judgment of the lower court and the verdict of the jury be set aside, and that plaintiff’s demand be dismissed, and defendant recover of plaintiff, on his reconventional demand, the sum of $269 50, with legal interest from judicial demand, and costs in both courts.
Petition for Rehearing, by defendant and appellant. — The defendant respectfully prays the court to grant him a rehearing, and to assign this cause again for oral argument.
In its opinion heretofore rendered, the court through Mr. Justice Howell, said:
“The error of plaintiff’s calculation consists in making defendant account to him for one-half of the loss on the adventures, out of the proceeds before division, while the true rule is to ascertain what each had contributed, and make them equal in this respect, and divide the balance of the proceeds. Under this rule we have obtained the above result, using plaintiff’s figures. ”
. The result here referred to by the learned Judge is.$269 50. The basis of the calculation made by the court, is the accounts current render'd by the factors, which were given in evidence in behalf of Frigerio, and to the correctness of which the court deemed there weie no well founded objections. -The case was viewed from this stand-point, and the net proceeds of these accounts stated to amount to $10,846 58. (See opinion of the court.)
But the defendant believes that a review of the figures, furnished by .the factors, under the rule laid down, will show beyond possibility of doubt that the court has fallen into an error to his disadvantage, and that the balance in his favor amounts in reality to the sum of $1,401 65.
* * -* * * * * * * * * * *- ' *
It must be borne in mind that the calculation which has how been so fully explained, and which makes out the balance due to Crottes arising out of the partnership transaction in cotton of the firm of Frigerio ,& Orottes, to be $1401 65, presupposes the correctness of the accounts of York and Caruthers, and leaves out the view 'entirely, the objections Which have been urged to 'the admissibility of those accounts as well as to their correctness, which the defendant, with deference to the superior judgment of the court, still deems well taken. •
. On the trial below a bill of exceptions was taken to the introduction of these accounts in evidence. (R. p. 83.) It would appear that those of York were only certified to be true copies from his books, and that no legal proof was made of the items of which they were composed. These contain many heavy charges, but it is not shown that such charges have actually been paid, or that they were necessary, or even usual and proper. Can it be decided that such accounts prove themselves; and is not Orottes justly entitled to the advantage resulting to him, from the failue Of Frigerio to make oirt this essential part of his case?
Besides, according to account No. 1, 'the gross receipts for the sale, *353 January 20th, of twenty-three bales of cotton were $6089 20, and the charges $2789 17, leaving a net balance of $3300 03, but then this small balance is further reduced by a charge for freight paid by L. J. Frigerio (the plaintiff) of $25 per bale for transportation from Madisonville to New Orleans, making an aggregate charge against proceeds of the cotton of the partnership for re-paying him, of $575.
Account 2 shows a result reached in a similar manner. According to this account, the eleven bales (making up with those on Account 1, .thirty four in all) sold for $1887 13, gross, and the charges being $1441 64, a balance of $455 49 is made to appear.
Again, however, according to this statement, Frigerio having paid $25 per bale freight, the net proceeds, $170 49, are once more reduced in order to reimburse him $275 for that outlay.
It appears, thus, that Frigerio has received from York in addition to the proceeds realized from the sales made by the latter of the thirty-tom: bales of cotton which belonged to the partnership, the round sum of eight hundred and fifty dollars, freight stated in these accounts to have been paid by him on the cotton;'but these statements of York, which pretend the payment of freight by Frigerio as charged, must be compared with the testimony of Jose Colamer, captain of the schooner Lucy, who brought the thirty-four bales ón his vessel for Frigerio from Madisonville to New Orleans. He testified on the trial had before the jury in St. Tammany, May 29th, 1867 — more than two years after receiving the cotton and transporting it on the Lucy — to the following effect;
“ That cotton was consigned to Mr. York and delivered to him; was at the time, the sole owner of the Lucy. Some freight on it (the cotton) never has been fully paid for. Mr. Frigerio shipped the cotton, received on account of the freight of the cotton somewhere in the neighborhood of about $150.” *■ * * * R..p. 51..
In conclusion, the ■ court is requested to reconsider the defendant’s bill of exceptions to the introduction in evidence in behalf of plaintiff of pages 74 and 76 in book marked “Ledger ” — page 74 containing a statement of thirty-four bales of cotton, purchased for joint account of Frigerio & Orottes, worth fifty five cents per pound — and page 76 purporting to be an account in columns headed Debtor and Creditor, styled Martial Orottes, and having on the credit side, in the handwriting of Orottes, the entry, January 31st. Samise de fond $2037 13. See R. p. 39; R. p. 29. Opinion Dist. Judge, R. p. 127.
The “Ledger” so offered ¡was a private book, (R. p. 30) the property of Frigerio alone, and under his individual control. Notwithstanding this however, two isolated pages thereof — numbers 74 and 76, were admitted against the defendant, in a suit relating to the special business of the partnership of Frigerio & Orottes, where the settlement of that partnership and acts done in connection with its business only wero before the court.
The manifest error of considering such evidence as binding upon the defendant will be here explained by recalling to the court the declarations of Frigerio himself, which are contained in the record: “I cannot, said he, (speaking of the transactions in business of Frigerio & Orottes as far back as May 24, 1866; R. p. 58,) detail fully or with any accuracy, because when settled and liquidated, the books, accounts, and papers, relative thereto, were, by mutual consent burnt, and destroyed. * *
And again, (when answering as a garnishee in the suit of Deynoodt vs. Crottes, R. pp. 157, 158.) “The said partnership contract of Frigerio & ' Orottes was not reduced to writing, but was oral, and was for the purchase and sale of cotton in co-partnership with equal shares of profit and loss.”
The wise and salutary rule which permits rehearings, will receive a beneficent application if the petition of the defendant be now granted, ílis all is at stake in this contest, and he will await its final decison with no common anxiety. The case has run through a vexed and intricate litigation, and the transcript sent up from the District Court, is so volumi *354 Hous that further discussion is needed to develop its contents thoroughly. So much of the judgment already rendered as justly sets aside the verdict of the jury in the parish of St. Tammany, is gratefully received by the defendant; and he does not suffer himself to doubt, that his claims — when again explained — will be recognized and fully sustained by the court.